IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JOSEPH  NELUMS,

                Plaintiff,

v.                                                case no. _____

SHIP SMART LLC (an Ohio company) d/b/a
JETPACK  and   TRUE KETO,

                Defendants.

## COMPLAINT  FOR VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

TO THE HONORABLE COURT:

1.     Plaintiff Joseph Nelums ("Plaintiff") is a real person who may be contacted through his undersigned attorney.   **Plaintiff hereby demands trial by jury.**

2.     Plaintiff brings this action in accordance with the anti-harrassment provisions of the federal Telephone Consumer Protection Act ("the TCPA").  A text message is "a call" within the meaning and prohibitions of the TCPA.

3.     The TCPA is intended to protect consumer privacy by prohibiting certain unsolicited and/or autodialed telemarketing calls including texts, and to provide for transparency by requiring that callers identify themselves and who they are calling for during their solicitations.

4.     The TCPA and the FTC's Telemarketing Sales Rule ("the TSR") established the National Do-Not-Call Registry ("the Registry").   The Registry allows people to list their telephone numbers

and thereby indicate their instructions to NOT receive telephone solicitations. *See* www.donotcall.gov

5.     Telemarketers are required by law to subscribe to and comply with the Registry.  NMSA § 57-12-22(C);  47 U.S.C. § 227(C)(3)(F-G);  16 C.F.R. Part 310;  47 C.F.R. § 64.1200(c).

6.     The TCPA established private rights of action to recover statutory damages for unlawful telephone solicitations.

### Jurisdiction and Venue

7.     Plaintiff and his telephone were in the State of New Mexico at the time of the illegal telemarketing the subject of this Complaint that Defendants and/or their agents harassed him with. Plaintiff resides in Lincoln County.   Venue is proper.

8.     This Court has subject matter jurisdiction based on a federal question and supplemental jurisdiction over state law claims pursuant to 28 USC §§ 1331 and 1367.

9.     Defendants do business within New Mexico because Defendants or their agents regularly, automatically, repeatedly text message the phones of New Mexicans located within New Mexico for the purpose of advertising products and services.  Defendants authorized and approved telemarketing to sell products and services throughout the State of New Mexico.  By directing telemarketing phone calls into the forum state, Defendants made themselves subject to the  specific personal jurisdiction of the courts of the forum state.

10.     Defendants operate and control standardized telemarketing that targets consumers nationwide, including the telemarketing the subject of this Complaint.  Some of Defendants' telemarketing is purposefully directed into the State of New Mexico at New Mexico residents, but it is all the same standardized telemarketing that is directed by Defendants into every part of the

2

United States.  As a result of Defendants' nationally standardized telemarketing the subject of this Complaint, Plaintiff suffered the concrete harms and injuries from that telemarketing, within the State of New Mexico, for which the TCPA provide remedies.

### the Defendants and their Unlawful Telemarketing conspiracy

11.    Ship Smart LLC ("Jetpack" or "Defendants") is an Ohio company that should be served a Summons by service on its manager Ashraf Abbas at PO Box 827, Barberton, OH 44203 or wherever he may be located.

12.    Ship Smart LLC does business under the registered assumed or fictitious name "JETPACK".   At all times material to this Complaint, acting alone or in concert with others including but not limited to True Keto, Jetpack formulated, directed, controlled, had the authority to control or participated in the unlawful acts and practices of True Keto the subject of this Complaint.

13.    Defendant True Keto is a real person or company.   Jetpack has actual personal knowledge of the true name, identity and whereabouts of True Keto but to-date refuses to disclose the same to Plaintiff.   The true identity and whereabouts of True Keto will be discovered so that the Court's process can be duly served on it.

14.    Jetpack and True Keto use and implement telephone solicitations (text messages) to offer and sell a product named "True Keto 1800" to residential consumers throughout the United States. Defendants market "True Keto 1800" as a nutritional supplement for household, non-business use. All acts and omissions by Defendants the subject of this Complaint were committed under the supervision, control or conscious lack of control of Jetpack and True Keto.

15.     Jetpack and True Keto have personal knowledge of and approve all the acts and omissions by Defendants or their agents the subject of this Complaint.

16.     Jetpack and True Keto approve and control the contracts and agreements for telemarketing on Defendants' behalf and authorize payments to the persons who make the actual telephone solicitations.

17.     Jetpack and True Keto control and approve the standardized telemarketing text messages and sales pitches directed at consumers including that to Plaintiff as described below.

18.     Jetpack and True Keto, at the same time that they control, direct, supervise and implement Defendants' telemarketing including that unlawfully directed at Plaintiff and into the State of New Mexico as described below,  do not require any Defendant or any Defendants' agents to subscribe to or comply with the Registry.

19.     Defendants have not adopted or implemented reasonable policies, practices or training to comply with the TCPA or the TSR.

20.     Defendants facilitate, condone and rely on telemarketing without subscribing to or complying with the Registry because they are personally enriched by and profit from the same.

21.     Minimal oversight by Defendants would have confirmed for them that the telemarketing done on Defendants' behalf was done without complying with the Registry, the TCPA or  the TSR.

22.     Defendants gave and continue to give substantial assistance or support to each other while knowing, consciously avoiding knowing or being recklessly indifferent to the fact that they are all engaged in acts or practices that violate the TCPA and the FTC's Telemarketing Sales Rule ("the TSR").

23.     Defendants have marketed and sold "True Keto 1800" as a common enterprise while engaging in the deceptive acts and practices described below.  Defendants conducted the business practices described below through an interrelated network of companies that were under common control ownership, management, business functions, employees, and likely office and work locations.   Because the Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices described below.

24.     Defendants operated the common enterprise resulting in the unlawful texts to Plaintiff the subject of this Complaint, in a similar manner as described in paragraphs 26 and 27 of **Exhibit 1 hereto** (an FTC Complaint against Jetpack and other of its associates).


**the Illegal Phone Calls to Plaintiff and a class of others  Defendants are Responsible For**

25.     Plaintiff's telephone is a wireless or cell phone assigned the number 210-710-7926. Plaintiff uses this phone and number for his personal, household and residential purposes.

26.     Within the past twelve (12) months Defendants conspired together as part of their common enterprise to repeatedly cause text message telephone solicitations to be initiated and directed to Plaintiff's cell phone including but not limited to three (3) texts true copies of which are at **Exhibit 2 hereto**.

27.     The text messages to Plaintiff are part of a mass-marketing scheme by Defendants where the same standardized sales messaging is directed to consumers nationwide using lead-lists of many names and phone numbers.  Defendants' agents periodically upload the lead lists into technology that then at pre-planned times blasts the texts out throughout the telephone communications network of the United States, automatedly, to all phone numbers on the list.

Defendants marketing scheme is intentionally designed to be implemented and is actually implemented in a manner that makes it difficult for any telephone consumer to identify Defendants unless the consumer buys the product Defendants are marketing.

28.     For example the text messages to Plaintiff included with little variation the common, standardized script "Stick to this for 3 weeks to burn [various pounds]", and gave consumers an option (internet landing-page links within the text messages) to use their internet-connected phones to view standardized advertisements for "True Keto 1800".

29.     Defendants designed and controlled the text message-linked internet advertising so that the landing pages consumers were directed to, were ever changing landing pages.   Consumers could only access a particular internet landing page for a short period of time after the text-message the landing page URL appeared in was received by the consumer.   The landing page link or URL would soon be removed or disabled.   Defendants designed their advertising to function in this manner to make it difficult for any particular consumer to identify them if the consumer intended to complain or make a claim about unlawful telemarketing.

30.     Defendants' telephone solicitation advertising is targeted to cell-phones because Defendants rely on smart-phone or internet-connected devices for interested consumers to access the internet advertisements directly via the text-messages.

31.     To identify Defendants and directly connect them to the unlawful text messages, Plaintiff followed the instructions in the last of Defendants' text messages to Plaintiff to view advertising for "True Keto 1800" on a web-page.   Plaintiff then used Defendants' web-page advertisement in the manner Defendants' designed and intended the web-page to be used, and purchased the product via the internet landing page before the web-page disappeared.

32.     Defendants charged and collected approximately $70 from Plaintiff, via the ACH technology they built into the website advertisement, and soon thereafter shipped "True Keto 1800" to Plaintiff.   An accurate photo depiction of the bottle Defendants sent Plaintiff is at **Exhibit 3 hereto**.

33.     Jetpack fulfilled Plaintiff's purchase.   An accurate photo depiction of Jetpack's shipping label to Plaintiff is **Exhibit 4 hereto**.

34.     Plaintiff purchased Defendants' product True Keto 1800 for the sole and only purpose of identifying Defendants and directly connecting them to their unlawful nationwide telemarketing conspiracy.

35.     Plaintiff never gave prior express written consent to receive telephone solicitations from Defendants or their agents.

36.     Prior to his purchase of "True Keto 1800" described above Plaintiff never had any prior relationship with Defendants.

37.     Defendants' telephone solicitations complained of herein aggravated and harrassed Plaintiff, wasted his time, invaded his privacy, disrupted his days, cost him money for electricity to re-charge his phone, and cost him $70 to identify Jetpack.

38.     Defendants do not subscribe to or comply with the Registry.

39.     Defendants have not adopted or implemented policies or practices to comply with the TSR or the TCPA.

40.     Defendants do not train or supervise their agents for telemarketing compliance.

41.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico along with a nationwide class of other telephone consumers was knowing, willful, deliberate and volitional.

42.     Plaintiff's cell phone number referred to above that Defendants repeatedly text-solicited, has at all relevant times been continuously listed on the National Do-Not-Call Registry.

43.     For over 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995). *Mohon v. Agentra*, 400 F.Supp.3d 1189, 1226 (D. NM 2019).

44.     The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to ***unsupervised third parties*** would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were ***judgment proof, unidentifiable, or located outside the United States, as is often the case***. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

45.     A direct connection exists between all Defendants herein and the telephone text messages complained of by Plaintiff because the texts were directly made on behalf of Defendants so they could all profit from a common enterprise in which they all substantially participated.

46.     Defendants are either directly liable for the telephone solicitations at issue because they made or initiated them, or Defendants are vicariously liable because they:

    a)     authorized the texts or caused them to be made;

8

b)      directly or indirectly controlled the persons who actually made or initiated the texts;

c)      allowed the telemarketers access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell using robocalling;

d)      allowed the telemarketers to enter or provide consumer information into Defendants' sales or operational systems;

e)      approved, wrote, reviewed or participated in developing the telemarketing sales scripts and messages;

f)      Defendants reasonably should have known or consciously avoided knowing that the actual texters and telemarketers were violating the law and Defendants failed to take effective steps within their power to require compliance;  OR

g)      Defendants gave substantial assistance or support to their agents and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that their co-conspirators were engaged in acts or practices that violated the TCPA and/or the TSR.

47.     The only way for consumers to readily identify the persons responsible for the mass-telemarketing campaigns the subject of this Complaint, is for them to buy the "True Keto 1800" product.   After they do so, the only identification information they receive with the product is the shipping information that identifies Jetpack.   Therefore Jetpack is the recipient of consumer complaints about unlawful telemarketing.    Based on these complaints and other information readily available to it, Jetpack knows or consciously avoids knowing it provides and profits from providing the fulfillment services for unlawful telemarketing and that the unlawful telemarketing is done on its behalf.

48.     Defendants ratified the unlawful calls to Plaintiff described above because they accepted and intended the benefits to themselves of the telemarketing while knowing or consciously avoiding knowing the calling was unlawful.

49.     Jetpack played an integral part in the telemarketing scheme described above including by processing purchases by consumers and then providing the fulfillment or shipping services, and including by handling any consumer complaints about the product Defendants sold or the unlawful telemarketing used by Defendants.


## CLAIM FOR RELIEF  -  Violations of the TCPA's Subsection C

50.     Defendants or their agents on their behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact his phone number Defendants or their agents solicited has been continuously listed on the Registry at all relevant times.

51.     For each of Defendants' unlawful text messages to Plaintiff the subject of this Complaint, Plaintiff should recover up to $1500 pursuant to 47 U.S.C. § 227(C).


## Request for Class Certification

52.     Telemarketing campaigns generally place calls or texts to hundreds or thousands of potential customers *en masse*.  Telemarketing cases are uniquely well-suited for class-action treatment.  Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received the illegal telemarketing texts from or on behalf of  Defendants.

53.     A class action is consistent with both the private right of action afforded by the TCPA and the fairness and efficiency goals of  Federal Rule of Civil Procedure 23.

54.     The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States:  (a) Defendants and/or a third party acting on their behalf, made two or more non-emergency telephone solicitation text messages to within a 12-month period;  (b) promoting Defendants' products or services;  (c) to the persons' cellular or residential telephone numbers;  (d) where the phone numbers Defendants or their agents texted had been listed on the National Do No Call Registry for at least 31 days prior to receipt of the text messages by these persons and  (f) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

55.     The class defined above is identifiable through phone records and phone number databases.

56.     The potential class members number at least in the many thousands, since telemarketing campaigns especially if automated make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

57.     Plaintiff is a member of the proposed class.

58.     There are questions of law and fact common to Plaintiff and to the proposed classmembers, including but not limited to the following:   Whether Defendants made, caused or controlled text message mass-marketing to phone numbers listed on the Registry;   Whether  Plaintiff and the class members are entitled to statutory damages because of Defendants' acts and omissions; Whether Defendants' violations of the TCPA were knowing or willful.

11

59.     Plaintiff's claims are typical of the claims of class members.  Plaintiff's claims and the claims of the class members arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

60.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class-members, he will fairly and adequately protect the interests of the class and its members, and he will be represented by counsel skilled and experienced in both class actions and the trial of individual consumer claims.

61.     Common questions of law and fact predominate over questions affecting only individual class members.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

62.     Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

63.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

65.     In accordance with Fed. R. Civ. Pro 38 Plaintiff demands trial of the facts by jury.

WHEREFORE, Plaintiff prays for entry of judgment for  -   his statutory, actual and/or treble damages sufficient in size to set an example and deter in the future the conduct complained of by Defendants or others.   Plaintiff requests the Court certify the class tentatively defined above and award the class statutory damages plus costs of administration.   Plaintiff requests an award of his attorney fees and costs.   Plaintiff prays for such other and  further relief as the court finds proper.

RESPECTFULLY  SUBMITTED,

By:

Sid Childress, Lawyer
1925  Aspen  Dr.  #600A
Santa  Fe,  NM  87505
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff

13